IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

EDWARDS FAMILY PARTNERSHIP, LP AND
BEHER HOLDINGS TRUST                                                                PLAINTIFFS

v.                                                                          NO. 3:13-CV-587-CWR-LRA

WILLIAM D. DICKSON                                                                   DEFENDANT

## ORDER

This matter is before the Court on Plaintiffs Edwards Family Partnership, LP's and Beher Holding Trust's Motion for Partial Summary Judgment. Docket No. 14. Defendant William Dickson responded in opposition, Docket No. 19, to which Plaintiffs have submitted a rebuttal, Docket No. 20. The Court held oral arguments on this and other motions, and the matter is now ready for review.

I.   Factual Background and Procedural History

This case arises from a separate suit where Community Home Financial Services (CHFS) and its President, William D. Dickson, filed a breach of contract lawsuit in the Hinds County Chancery Court against Behar Holdings Trust (BHT) and Edwards Family Partnership, LP (EFP) in February 2012. That lawsuit was subsequently removed to this Court. In that case, EFP and BHT asserted counterclaims against Dickson seeking to hold Dickson personally liable based on two personal guaranties of certain promissory notes executed by CHFS.

In May 2012, CHFS filed for bankruptcy, which resulted in an automatic stay of the counterclaims against CHFS. CHFS and Dickson filed an adversary proceeding in the bankruptcy court seeking to determine the amount CHFS owes and the amount of Dickson's personal liability. In a March 2013 order, this Court found that the bankruptcy stay did not apply

1

to counterclaims against Dickson and those counterclaims were severed. *See Cmty. Home Fin. Servs., Inc. v. Edwards Family P'ship*, *LLP*, 3:12-CV-252-CWR-LRA, 2013 WL 1336505 (S.D. Miss. Mar. 29, 2013). The counterclaims discussed in *Cmty. Home Fin. Servs., Inc. v. Edwards Family P'ship*, *LLP*, are the subject of this suit.

### A. *The Original Loan Agreement*

On September 25, 2006, CHFS, which was in the business of owning and servicing consumer loans, executed a loan agreement with The Rainbow Group, Ltd. (Rainbow), under which Rainbow agreed to advance up to $10,000,000 to CHFS for the purchase of consumer loans. *See* Exhibit B, Docket No. 14-2, at 22-3. These consumer loans were assigned to Rainbow as collateral for the loan agreement. Dickson signed the loan agreement as an officer for CHFS and, individually, as a personal guarantor of CHFS's debt owed to Rainbow. *See* Exhibit A, Docket No. 14-1, at 253 (Dickson's Trial Transcript) (where Dickson testified that he is guarantor of the loan). That same day, CHFS issued a promissory note to Rainbow, which provides that CHFS would pay back the principal amount (with interest) advanced to it by Rainbow under the original loan agreement. *See* Exhibit C, Docket No. 14-3 (2006 Promissory Note). Dickson also signed the promissory note as CHFS's President, and as a personal guarantor. *Id*. at 4; *see also* Dickson's Trial Transcript, at 269.

### B. *The Amended Agreement*

On August 10, 2010, the original loan agreement was amended by separate agreements to increase CHFS's credit line from $10,000,000 to $16,000,000, and to assign and divide it between two lenders, BHT and EFP. Docket Nos. 14-4 (BTH Loan Agreement) & 14-5 (EFP Loan Agreement). BHT loaned $12,000,000 to CHFS under its agreement and EFP agreed to loan CHFS $4,000,000. Under both amended agreements, the terms of the original loan

agreement remained the same. *Id*. Dickson signed these agreements and testified to its validity. *Id*.; *see also* Dickson's Trial Transcript, at 271.

CHFS also executed two commercial loan notes and lines of credit in the amount of $12,000,000 payable to BHT and $4,000,000 payable to EFP. Docket Nos. 14-6 (BHT Note) & 14-7 (EFP Note). Dickson signed these notes on behalf of CHFS as President and as personal guarantor. *Id*. Additionally, Dickson signed two separate guaranty agreements as "a continuing guaranty of [his] Guaranteed Obligations under the Loan Documents."[1] *See* Exhibit H, Docket No. 14-8 (BHT Guaranty) & Exhibit I, 14-9 (EFP Guaranty).

According to Dickson, CHFS made payments under the terms of the original loan agreements, the amended agreements, and the BHT and EFP notes until October 2011. Dickson's Trial Transcript, at 286. Dickson has testified that CHFS breached the loan agreement by stopping payments. *Id*. at 308. On January 20, 2012, EFP and BHT sent demand letters to CHFS requesting it to meet certain conditions of default on the BHT and EFP notes by January 31, 2012, or face acceleration of the loan maturity. Docket Nos. 14-10 (BHT Letter) & 14-11 (EFP Letter). CHFS never made any more payments and, on August 1, 2013, the BHT and EFP notes matured. In the current suit, Plaintiffs seek to recover the amounts due on these notes for which Dickson personally guaranteed.

## II.     Standard of Review

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once the moving party has initially shown that there is an absence of evidence to support the non-moving party's cause, the non-movant must come forward with specific facts showing a

---

[1] Both guaranty agreements contained language in which the Guarantor waived all defenses.

genuine factual issue for trial." *TIG Ins. Co. v. Sedgwick James of Washington*, 276 F. 3d 754, 759 (5th Cir. 2002) (citations and quotation marks omitted).

The Court must "view the evidence and draw reasonable inferences in the light most favorable to the non-movant." *Maddox v. Townsend and Sons, Inc.*, 639 F. 3d 214, 216 (5th Cir. 2011) (citation omitted). "Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *TIG Ins. Co.*, 276 F. 3d at 759 (citing *SEC v. Recile*, 10 F. 3d 1093, 1097 (5th Cir. 1993)).

Because this case is proceeding in diversity, the applicable substantive law is that of the forum state, Mississippi. *Capital City Ins. Co. v. Hurst*, 632 F. 3d 898, 902 (5th Cir. 2011); *Smith v. Goodyear Tire & Rubber Co.*, 495 F. 3d 224, 228 (5th Cir. 2007). State law is determined by looking to the decisions of the state's highest court. *St. Paul Fire and Marine Ins. Co. v. Convalescent Services, Inc.*, 193 F. 3d 340, 342 (5th Cir. 1999).

**III.   Discussion**

The sole issue presented on Plaintiffs' motion for partial summary judgment is whether Dickson is personally liable for CHFS's default of the BHT and EFP loans by reason of a purported contract of guaranty. After careful review of the record evidence, the Court finds that Dickson can be held individually liable to BHT and EFP based on the personal guarantees he executed.

Because the foundation of Plaintiffs' claims is rooted in contract, the contract sought to be enforced must be valid and the court must construe and enforce the contract as made. *Rotenberry v. Hooker*, 864 So. 2d 266, 270 (Miss. 2003). "The elements of a valid contract are: '(1) two or more contracting parties, (2) consideration, (3) an agreement that is sufficiently definite, (4)

parties with legal capacity to make a contract, (5) mutual assent, and (6) no legal prohibition precluding contract formation.'" *Id*. (citation omitted).

Here, Dickson signed his named on the original loan document, the amended loan documents, and both promissory notes to EFP and BHT with a handwritten notation of his corporate capacity and, separately, in his individual capacity as personal guarantor. He also signed a guaranty agreement which acted as a continuing guaranty for the previous notes. Dickson testified that he is the guarantor of the loans, which also referenced him as personal guarantor to the loan agreements entered into by CHFS.

Under Mississippi law, "[t]he person claiming under the guaranty has the burden of showing that the debt whose recovery is sought falls within the contractual terms and that all conditions upon the guarantor's liability have occurred." *See EAC Credit Corp. v. King*, 507 F.2d 1232, 1236 (5th Cir. 1975) (citation omitted). A "court is obligated to enforce a contract executed by legally competent parties where the terms of the contract are clear and unambiguous." *Merchants & Farmers Bank v. State ex rel. Moore,* 651 So.2d 1060, 1061 (Miss. 1995). The language of each agreement clearly establishes Dickson's liability in his individual capacity to the notes. Dickson has further testified that once CHFS stopped making payments on its loans in October 2011, it violated the terms of the agreement. As of August 1, 2013, pursuant to the promissory notes and loan agreements Dickson signed, the unpaid balance was in default.

The language of the notes and guarantees are clear and unambiguous. Thus, CHFS may be held liable to the unpaid debt and—as guarantor—so is Dickson. The Court only rules that the guaranty agreement sought to be enforced upon Dickson by EFP and BHT is valid and that

Dickson is bound legally to the terms stated therein. Thus, the amount to be recovered under the EFP and BHT notes is an issue that must be determined.[2]

Because the interest on the principal amount is to be calculated pursuant to Schedules of the Loan and Security Agreements, Plaintiffs shall provide appropriate affidavits detailing the full amount of principal and interest owed through the date of entry of this Order.[3] If Dickson disputes those calculations, he shall present any counter affidavit setting forth the amount he contends is owed under the guaranty. After receipt of this information, the Court may hold a hearing for the purpose of determining the amount owed by Dickson.

Plaintiff shall file their affidavits no later than September 20, 2014, and Dickson, if he chooses, may submit counter-affidavits within ten days of Plaintiffs' submission but no later than September 30, 2014.

**SO ORDERED AND ADJUDGED**, this the 10th day of September, 2014.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE

---

[2] This Order also moots the following motions: Plaintiffs' Motion to Strike Dickson's Affirmative Defenses, Docket No. 33.; Plaintiffs' Motion for Leave to File Supplemental Briefs, Docket No. 36; Plaintiff's Motion to Expedite Relief, Docket No. 40.

[3] Plaintiffs may choose to file new affidavits or they may supplement the Affidavit of Martha Edwards Borg, *see* Docket No. 14-13, which Plaintiffs produced in support of their Motion for Partial Summary. Consequently, the Court denies Defendant's motion to strike her affidavit. *See* Docket No. 21.